(96 App. Div. 194.)

DOLL v. PIZER et al.

(Supreme Court, Appellate Division, First Department. July 13, 1904.)

1. VENDOR AND PURCHASER—AGREEMENT TO CONVEY—ABILITY TO SHOW TITLE
—EVIDENCE.

    The will of a landowner dying in 1822 gave all his property to trustees to divide among "the several legatees," and provided that, if a satisfactory division could not be made, the trustees might sell the property, and divide the "proceeds," one-fifth to be loaned for the benefit of his daughter and her children, "born or to be born," with authority to encroach on the principal, if necessary, for the support, and after her death the trustees were to pay over to her children the residue of said one-fifth "as they shall severally become of age." The trustees conveyed all the land except one certain piece, and the legatees, including the daughter and her then living children, executed releases to the trustees. No deed to said piece was shown, but in 1825 one of the sons conveyed his property in trust, and in 1857 a reconveyance was made, in which said piece was specifically included, and the son afterwards executed a deed conveying said piece, from which time title thereto was not disputed. Held, that the grantees of said piece could convey good title as against the objection that a right might be asserted under children of the daughter born after the testator's death.

Proceedings by Otto W. Doll against Leon Pizer and another on an agreement to convey land. Controversy submitted on case agreed on. Judgment for plaintiff.

Argued before HATCH, McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

F. B. Chedsey, for plaintiff.

John D. Connolly, for defendants.

PATTERSON, J. The plaintiff and the defendants entered into a contract for the sale and purchase of a lot of land in the city of New York, known as No. 80 Chrystie street. At the time fixed for closing the transaction the defendants objected to taking a conveyance on the ground that they could not obtain a marketable title. The single ques-

tion on this appeal is whether one specific objection was well taken. It is, in substance, that there may be certain persons now living, under disabilities, whose interests in the land have never been acquired by the plaintiff or his predecessors in title, and which may not be extinguished.

The earliest record we have affecting the title to the property is a conveyance made to one John Gassner on November 19, 1784, by Stoutenberg and Van Cortlandt, commissioners of forfeiture of the state of New York. John Gassner died in the year 1822, leaving a last will and testament, which was duly admitted to probate; and by that will he devised and bequeathed all his real and personal property to his executors and trustees and the survivor or survivors of them, upon the trust that, as soon as convenient after his decease, such executors and trustees should make a division of the whole estate among "the several legatees." And the will further provided that, if a division or partition could not be equally made, according to the rights of "such several legatees," without prejudice to either, then the executors and trustees, or the survivors or survivor, were required forthwith to sell, lease, or otherwise absolutely dispose of all of the estate, real or personal, as aforesaid, at public auction or otherwise, and convey the same in fee simple, and after the receipt of the moneys to arise from such sales of real and personal estate to pay the debts and funeral expenses, and then to divide all the residue "of such proceeds of my estate" into five equal parts or portions, and thereupon to pay one of them to the testator's grandsons John Gassner and Peter Gassner, sons of his eldest son, John; one other fifth part of the proceeds to David Gassner, John Gassner, and Maurice Gassner, the surviving children of his son Peter Gassner; then to pay over to each of his two sons Daniel Gassner and Andrew Gassner, or to retain for their benefit two other equal fifth parts of such proceeds, to be equally divided between them, their heirs and assigns, or the survivor of them in case either shall have died without issue, share and share alike. The testator then provided as follows:

"Fifthly: That my said executors and trustees so and shall as soon as convenient for them, appropriate and put out the remaining part or sum of one-fifth part of my estate so as aforesaid directed to be divided and by them (in case of the sale thereof or otherwise) or so much thereof as they shall deem advisable at interest on competent * * * security * * * and pay the interest, proceeds or dividends thereof unto my daughter Mary Catharine Milderberger, the wife of John Milderberger, if living at the time of my decease, for her maintenance and support during her natural life, and for the education, maintenance and support of her children during their minority, or so much thereof as she may require according to the discretion of my said executors and trustes, upon her own receipt only, free from any control of her husband, and if such interest and dividends shall not be sufficient for her comfortable and decent support and for the proper bringing up of her children as aforesaid, that then my said executors and trustees shall and do appropriate from time to time so much of the said principal as in their opinion may be deemed necessary for the aforesaid purposes and after the death of my said daughter Mary Catharine Milderberger, that they my said executors and trustees of the survivors of them shall and do divide and pay over the residue of the said one-fifth part of my estate so remaining in their hands with interest thereon accrued and not paid out by them unto and among my grandchildren Mary Milderberger, Catharine Milderberger, Eliz-

abeth Milderberger and Oliver Milderberger now living and such other child or children of my daughter born or to be born as she may leave or the survivor of them as they shall severally become of lawful age, to whom I will and devise the same equally to be divided between them and their respective heirs, share and share alike."

Daniel Gassner became the sole executor and trustee under this will. John Gassner died seised of 11 parcels of land, and it is admitted that the land No. 80 Chrystie street is one of those parcels. All of them, except the premises in question, were conveyed by the executor and trustee. In those conveyances it is recited that they were made in pursuance of the authority to sell and divide proceeds contained in the will of John Gassner, a specific division or partition among the beneficiaries under the will being impracticable. The proceeds arising from the sales of these properties were evidently divided in accordance with the provisions of the will, or in some other manner satisfactory to those who were entitled to receive them. There is no deed on record conveying No. 80 Chrystie street, but on September 3, 1825, a deed was executed by Andrew Gassner, a son of John Gassner, which conveyed all of his (Andrew Gassner's) property in trust to Peter McCartee, to pay his debts, and to manage the real estate and collect the rents and issues, and pay them over to him during his life, and for the support of his wife and children, and after his death to convey the estate to his heirs at law. No specific piece of property is described in this deed of trust, but it is a general conveyance of all and singular the lands, tenements, and real estate of the grantor. In 1841, McCartee having died, Burdick was appointed trustee in his place, and in 1857 the substituted trustee and the presumptive heirs at law of Andrew Gassner reconveyed the property of Andrew Gassner, and in that deed the premises No. 80 Chrystie street are specifically mentioned as forming part of the trust estate. After the death of Andrew Gassner there was a confirmatory deed executed by his children and heirs at law to Otto Doll, who was then in possession. In 1863, Andrew Gassner executed to John Rowe a lease, and in 1869 he executed and delivered a full covenant warranty deed to Rowe, who conveyed the premises in 1869, and there is no question of title since that period.

Recurring to the 10 deeds made by the executors and trustees of John Gassner's estate, it would appear that all the testator's children and grandchildren, including the then living children of his daughter Mary Catharine Milderberger, executed full releases to the executors and trustees, reciting the receipt and payment of the distributive shares of the estate to which they were severally and respectively entitled. The first release executed by Mary Catharine Milderberger reserved the sum of $14,000, "being her part or share of the estate of said John Gassner, deceased, or the balance then remaining and due thereon." But she subsequently executed another release, in which she and her children acknowledged the payment of this $14,000.

It is, we think, ascertainable from the deeds and releases and the recitals contained therein that there was a full settlement of the estate of John Gassner under and by authority of the will, and that the real estate was converted into personalty, and that those who were entitled

took their distributive shares as legatees, received them in full, and gave acquittances for them. As before remarked, there does not appear on record any deed made of No. 80 Chrystie street by the executor and trustee of John Gassner, and the objection now taken by the defendants to the title is that rights of ownership in that piece of property may exist in some person or persons entitled under his will to an interest in that particular lot of land; and it is urged that the plaintiff cannot convey a complete title, but that, as against the interests of some who may be in being and entitled to claim under the will of John Gassner, the plaintiff can convey a right resting in adverse possession alone, and, that being so, the burden is upon the plaintiff to show that no one under the disabilities of infancy or mental incompetency has a present interest; or, in other words, must show by proof, or by reasonable inference from facts proven, that no such persons are in existence. It will be seen from the foregoing statement that this objection can apply only to children of Mary Catharine Milderberger unborn at the time of John Gassner's death in 1822, or possibly to their descendants. Every other person has released his or her interest. There is clearly in the record an adverse holding of and under Andrew Gassner from as far back as 1857, when he received from trustees a deed specifically naming this property, and his occupation thereunder was plainly against every one. It may not be altogether impossible that, even after the expiration of 80 years, some person may appear claiming to be interested in the property as a child or descendant of a child of Mary Catharine Milderberger, born after she and her then living children executed releases of their interests in the estate which they realized through the proceeds of sales and the conversion of realty into personalty; but it is highly improbable. However, we do not think the title to this property may be affected by such an objection. We are of the opinion that whoever was entitled to take under the will of John Gassner would take only a share of the proceeds of the sale of his real estate, and not specific interests in land as such. Although, as stated, there is no deed on record made of the premises No. 80 Chrystie street, yet in the 10 deeds of other premises there are recitals that the whole estate was converted into personalty, and the releases are of all the interests of the releasors in the estate. The recitals in those deeds and releases are some evidence that the whole estate was disposed of by the executors and trustees. Jackson v. Russell, 4 Wend. 548, affirmed sub nom. Russell v. Jackson, 22 Wend. 277. Giving force to that evidence in connection with the other facts admitted in the agreed statement, we think the objection should not be sustained, that the plaintiff can give a marketable title, and that judgment should be ordered in her favor, with costs. All concur.